FILED

2009 Feb-26  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| LYDIA HANSEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 03:07-CV-00772-KOB |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The claimant, Lydia Hansel, brings this action seeking judicial review of a final decision of the Commissioner of Social Security that denied her claim for Social Security Disability Insurance ("SSDI") benefits.

On October 26, 2004, the claimant protectively filed an application for SSDI benefits under Title II of the Social Security Act, alleging that she had been disabled since June 30, 1995 because of obesity, arthritis, vascular insufficiency, bronchitis, hypertension, sinusitis, phlebitis, anxiety, and depression. (R. 69, 74, 81-90, 100-04, 111-18, 122). The Social Security Administration initially denied the claimant's application on January 10, 2005, and an Administrative Law Judge did likewise on February 17, 2006 after holding a hearing on January 3, 2006. The claimant appealed to the SSA Appeals Council, which, on June 23, 2006, granted review for the consideration of new

1

evidence.  On remand, the ALJ held a second hearing on September 21, 2006 and again denied the

claim on December 12, 2006.  On April 10, 2007, the Appeals Council denied review of the ALJ's

decision on remand, rendering the ALJ's opinion the Commissioner's final decision.  Thus, this case

is now ripe for review pursuant to § 405(g) of the Social Security Act, 42 U.S.C. § 405(g), and 1383

(c)(3).  This court will REVERSE and REMAND the Commissioner's denial of SSDI  benefits.

## II.  Issue Presented

Whether the ALJ properly evaluated the claimant's subjective allegations in light of the

pain standard.[1]

## III.  Standard of Review

The standard for reviewing the Commissioner's decision is limited.  This court must

affirm the Commissioner's decision if the Commissioner applied the correct legal standards and

if his factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g);

*Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999

(11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions,

including determination of the proper standards to be applied in evaluating claims." *Walker*,

826 F.2d at 999.  The Commissioner's factual determinations, however, are not reviewed *de*

*novo*, but are affirmed if supported by substantial evidence.  "Substantial evidence" is "more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The court

---

[1]Although Claimant raised other issues, the court need not address those because of its
disposition of this issue.

must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner]'s factual findings." *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but the court must also view the record in its entirety and take account of evidence that detracts from the evidence upon which the ALJ relied.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV. Legal Standard

A person is entitled to disability benefits when he or she cannot

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period if not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  To make this determination, the Commissioner employs a five-step, sequential evaluation process:

(1) Is the person presently employed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant showed an underlying medical condition, and either

(1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); 20 C.F.R. § 404.1529.

## V. Insured Status

To be eligible for SSDI benefits, a claimant must have had "insured status" at the time he or she became disabled.  Generally, this requirement means that the claimant has paid Social Security taxes through employment or self-employment for a minimum of 20 of the previous 40 quarters.  42 U.S.C.S. § 416(i)(3)(B).  The latest date of the claimant's insured status was June 30, 1995. Therefore, to receive SSDI benefits, she must have been disabled on or before June 30, 1995.

## VI. Facts

The claimant is a high school graduate who was 43-years old on June 30, 1995, the date of her alleged onset of disability.  The claimant worked as a self-employed flea market vendor up to and including part of June 1995.  At her flea market shop, she also operated a press that put designs on t-shirts.  Between April 12, 1994 and May 30, 1996, the claimant's body weight fluctuated between a low of 314 pounds and a high of 322 pounds.  (R. 417-31).  The claimant also smoked throughout that time period.  (R. 425, 28).

The medical records documenting  Dr. Crockett treatment of claimant  for the period March 29, 1994 to October 13, 1997 were not part of the record at the time of the ALJ's first hearing and his subsequent first decision; the Appeals Council allowed these documents to supplement the record for reevaluation upon remand.  Those medical documents reflect that Dr. Crockett treated claimant on

April 12, 1994, noting that the claimant weighed 314 pounds and smoked a pack of cigarettes per day. He; commented that her varicose veins were "generally doing well" with Coumadin; and diagnosed her with hypertension, cardiac palpitations, osteoarthritis, edema, hyperlipidemia (the presence of raised levels of fats in the bloodstream), and being "overweight." (R. 433). Records indicate that on that date she was already taking and received renewed prescriptions for Clinoril (an anti-inflammatory drug); Lasix (for fluid retention); K-Tab (to add potassium to blood); Tenormin (beta blocker used to treat chest pain and high blood pressure); and Coumadin (a blood thinner to reduce blood clots) because of an earlier episode of thrombophlebitis (blood clot causing swelling in veins). On October 10, 1994, Dr. Crockett treated claimant for pain in her left foot "for a long time" and stiffness, diagnosing her as suffering from fasciitis (heel spurs attributed to inflammation) and arthritis of the left foot. He gave her a steroid injection in that foot, prescribed soft-soled shoes with foam inserts, and renewed her prescriptions (R. 431). On November 8, 1994, Dr. Crockett diagnosed the claimant with worsening hyperlipidemia, elevated uric acid, hypertension, and palpitations. He noted that the claimant was not taking Clinoril and that she had stated she did not want anti-inflammatory medication. He further noted that she "still has arthritis pain and tendonitis pain left foot" and discussed treatment options for her foot pain. (R. 429-30).

On January 6, 1995, the claimant was diagnosed with acute asthmatic bronchitis, as well as the chronic problems listed in her 1994 records. (R. 427). On January 10, 1995, Dr. Crockett treated claimant for fever and coughing. (R. 428). Also on January 10, a chest wall x-ray revealed borderline heart enlargement. (R. 428). On March 16, 1995, Dr. Crockett treated claimant for respiratory problems. (R. 425). On April 3, 1995, Dr. Crockett refilled her prescriptions for the chronic problems stated in the 1994 records and noted that, after her last visit, she had experienced redness

and tender knots in her legs and had seen Dr. Long with a diagnosis of phlebitis. Dr. Crockett's diagnoses included venous insufficiency in the lower limbs (valves do not pump blood to the heart so blood pools and causes swelling) as well as venous stasis dermatitis (inflammatory skin disease in patients with chronic venous insufficiency), phlebitis, asthmatic bronchitis, sinusitis, conjunctivitis (improved), and pharyngitis (improved). (R. 424, 26).

On August 8, 1995, the claimant reported to Dr. Crockett that she felt "OK," that her heart palpitations were stable, and that she was experiencing arthritic pain in her knees. (R. 422-23). The claimant also reported to Dr. Crockett on August 8 that she had signed up for an obesity clinic and that she was on a low calorie diet. (R. 423). On November 22, 1995, Dr. Crockett again treated the claimant for arthritis pain and for severe congestion with cough. (R. 421).

The next recorded treatment was a March 19, 1996 diagnosis of tendonitis and phlebitis of the left arm and degenerative changes of the knees after the claimant presented with left arm pain and severe knee pain. (R. 419). On April 30, 1996 and again on May 30, 1996, Dr. Crockett diagnosed the claimant with severe degenerative arthritis of the knees, and listed the same chronic diagnoses reflected in the 1994 records. (R. 417-8). On July 2, 1996, Dr. Crockett refilled prescriptions, listed the same chronic diagnoses reflected in the 1994 records and made an express statement that claimant needed to "elevate legs prn." (R. 416). On August 26, 1996 and January 3, 1997, Dr. Crockett listed the same chronic diagnoses reflected in the 1994 records, but indicated in 1997 that claimant's obesity was worse after the claimant weighed in at 341 pounds and admitted noncompliance with her diet. (R. 407, 415-16). Between the August 1996 and January 1997 office visits, Dr. Crockett treated claimant twice for congestion and cough. (R. 411-13).

6

First Hearing

On January 3, 2006, the ALJ held a hearing on the claimant's application for benefits and issued an opinion on February 17, 2006.  The ALJ noted that the earliest medical reports that were then part of the administrative record were dated 1997 or 1998, although claimant had offered pharmaceutical statements listing Coumadin therapy dating back to February 1994, and Dr. Crockett's earlier billing statements listing diagnoses of obesity, osteoarthritis, varicose veins, edema, and venous insufficiency.  Dr. Crockett's office could not locate the older records, and communicated to claimant that those records had been destroyed, so they were not available at the time of the first hearing.

The claimant testified that in 1995, she operated a shop in a flea market.  Her problems in 1995 included obesity; asthma; chronic bronchitis; arthritis in the legs and bottom of her feet with related bone spurs; venous insufficiency, swelling in her legs, and chronic phlebitis.  According to claimant, the phlebitis, venous insufficiency, and swelling required her to elevate her legs above her heart for fifteen minutes out of every hour, and further, she could not sit "in a sedentary position" all day or stand for long periods.  ( R. 463-4).   The phlebitis caused soreness and achiness and the arthritis also caused pain.   These limitations required her to close business and go to the back of the shop to elevate her legs for the required time period, or in busy times, she would continue working but suffer resulting phlebitis flare-ups.  She did not hire anyone else to help run the shop, although her husband would assist when he was available.  Although she tried to keep the shop open five days per week, many work days were cut short, and she had to close the business in June of 1995 because she could not keep the shop open enough hours to be successful.  She also testified that she suffered panic attacks and anxiety.

7

The VE testified that claimant's past relevant work fell under the medium exertion level. He further testified that if an individual of the claimant's age, education, and past relevant work experience is able to perform sedentary work and has psychiatric and psychological impairments no greater than moderate in severity, then the individual would not be able to return to past relevant work at the medium exertion level, but she could work at the "full range of unskilled sedentary jobs of which there are 200 examples provided with the Dictionary of Occupational Titles." ( R . 478). The VE also testified that "the need to lie down and/or elevate the leg for extended periods during the workday . . . would preclude the ability to maintain any gainful employment including sedentary work." (R.  479).

The ALJ's First Decision

In his decision after the first hearing, the ALJ found that claimant was insured for benefits through June 30, 1995.  He further found that claimant had not engaged in substantial gainful activity since her alleged onset date.  Although the ALJ did not have medical records before 1997-98, he inferred from Dr. Crockett's  medical diagnoses listed on the 1995 billing statements and from the subsequent medical records that the claimant was obese.  The ALJ further found that claimant's condition of obesity was "severe" within the meaning of the regulations, but that her obesity did not meet or medically equal one of the listed impairments.  He was unable to determine without medical records whether any other conditions were severe on or before June 30, 1995.  (R. 34).

In light of the dearth of supporting documentation, the ALJ found claimant's allegations regarding her limitations in 1995 not totally credible.  He determined that on or before June 30, 1995, claimant retained the residual functional capacity to perform the full range of medium

exertional work activity, and that claimant was capable of performing her past relevant work as a flea market vendor.  (R. 35).

### Appeals Council Decision

The claimant appealed the ALJ's findings to the Appeals Council and that council granted the request for review under the new and material evidence provision of the Social Security Administration regulations.  It vacated the hearing decision and remanded the case for the ALJ to consider new evidence –  records from Dr. Crockett for the period March 29, 1994 to October 13, 1997.  In light of this new evidence, the Appeals Council requested that the ALJ reevaluate the claimant's RFC, her subjective complaints, and obtain evidence, if necessary, from a medical expert to clarify the severity of her impairments through June 30, 1995. (R. 24-5).

### Second Hearing and Decision

The ALJ held a second hearing on September 21, 2006 and issued a second opinion on December 12, 2006.  At this hearing, the ALJ had access to Dr. Crockett's medical records from March of 1994 through October of 1997, which covered the latest date that claimant was eligible as an insured, June 30, 1995.   The claimant stated that in the months prior to her business closing in 1995, she should have elevated her legs fifteen minutes out of every hour, but that she usually elevated her feet four times a work day about a half an hour each time.  (Ra. 502).  The VE reiterated his testimony that if claimant had a need to elevate her leg or legs for extended periods during the day outside of customary breaks, that need would preclude all employment.  (R. 503-4).

The ALJ found that the claimant had "severe" obesity, arthritis, vascular insufficiency, bronchitis, and hypertension and that she had other conditions – depression, anxiety, sinusitis, and

phlebitis (single episode) – that were not severe.  He found, however, that these impairments, either singly or in combination, failed to meet or equal the applicable listed impairments.  (R. 19).

In determining whether claimant could perform her past relevant work, the ALJ considered all of her symptoms and complaints, including pain, and acknowledged the Eleventh Circuit's pain standard.   The ALJ found that claimant's medical evidence met part one of the standard  – underlying medical condition – because of the impairments listed above, but found that neither prong of part two of the standard was satisfied.  (R. 20).  The only medical evidence relating to the period on or before June of 1995 were the records of Dr. Crockett.  The ALJ reviewed claimant's medical records and stated that, although her recent records showed that her multiple conditions continued to deteriorate over the years, "none of the evidence shows that the claimant had impairments before June 30, 2006 (sic) that resulted in limitations inconsistent with the full range of medium work." (R. 22).  The ALJ presumably was referring to the alleged onset date of June 30, 1995.  He further found that at no time had claimant's occasional symptoms of depression or anxiety resulted in more than mild functional limitations.  (R. 22).

In light of his RFC findings, the ALJ found claimant could perform her past relevant work as of June 30, 1995, the date last insured.  He found that she was not "disabled" within the meaning of the Social Security Act.  (R. 22).

## VI. Discussion

The claimant alleges that the ALJ did not properly evaluate her subjective complaints.  In evaluating pain and other subjective complaints, the Commissioner must consider whether the claimant showed an underlying medical condition, and either

> (1) objective medical evidence that confirms the severity of the alleged
> pain arising from that condition or (2) that the objectively determined

> medical condition is of such a severity that it can reasonably be expected
> to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (restating this same test); 20 C.F.R. § 404.1529.  "If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so." *Wilson*, 284 F.3d at 1225 (citing *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

In the instant case, claimant testified that in 1995, she had to soak her legs and frequently elevate her legs - at least four times a work day for a half an hour, and preferably higher than her heart - because of edema, phlebitis, venous insufficiency, and the pain associated with these conditions.  She testified that these conditions also prohibited her from frequent standing.  During the time that she was operating her shop, she stated that she would have to close business to elevate her legs, and if she had to delay this routine because of customers, she suffered subsequent bouts of phlebitis.  Because a VE testified at both hearings that her need to elevate her legs for extended periods during the workday outside of customary breaks would preclude all work, the ALJ could not accept her subjective testimony and still find her able to work.

Evaluating claimant's subjective complaints in light of the pain standard , the ALJ found that the claimant met part one of the standard, having the following underlying medical conditions:  obesity, arthritis, vascular insufficiency, bronchitis, and hypertension, all of which were "severe" as well as depression, anxiety, sinusitis, and phlebitis (single episode) that were "not severe."  (R. 19-20).  The ALJ next concluded that claimant had not satisfied either prong of part two.  However, the ALJ's opinion contains inadequate support for that bare conclusion.  The next sentence after the conclusion is telling, for it is merely a fragment: "This is consistent with. " That sentence leaves the court hanging, and unfortunately, the remainder of the opinion does not

11

further enlighten the court.  Although the ALJ proceeds with a recitation of the claimant's conditions and related treatment from Dr. Crockett's 1994-97 medical records, he does not perform an analysis of those records in light of part two of the pain standard and explain why the records belie the need to elevate her legs.  Significantly, the ALJ fails to mention a notation in the July1996 medical records in which Dr. Crockett expressly advises claimant to "elevate leg prn." (R. 416).  Although this record is dated approximately a year after the date last insured, the doctor notes the same problems that claimant experienced in 1995: swelling in feet/legs, venous insufficiency in lower limbs, edema in feet, hyperlipidemia, osteoarthritis.  Given the lack of analysis in the ALJ's opinion, this court is unconvinced that the ALJ properly applied the pain standard.  Even assuming *arguendo* that he did so, the court finds that the ALJ improperly ignored objective evidence confirming claimant's subjective complaints as well as objectively determined severe medical conditions that would reasonably require elevation of her legs.  Thus, substantial evidence does not support the ALJ's findings.

### V.  Conclusion

For the reasons stated, the court REVERSES and REMANDS the Commissioner's decision.  The court will enter a separate Order consistent with this opinion.

Dated this 26th day of February, 2009.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE